26 P.3d 1240

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ramon DELACERDA, Defendant–Appellant.**

**No. 26162.**

Court of Appeals of Idaho.

June 26, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant. Paul S. Sonenberg argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

This appeal challenges the denial of a motion to suppress evidence in a prosecution for possession of a controlled substance. The evidence was gained when police officers forcibly entered a public restroom that was occupied by Ramon Delacerda and a second man, who attempted to hold the door shut against the police. The district court denied Delacerda's suppression motion, and Delacerda entered a conditional guilty plea, reserving the right to appeal the denial of the motion.

## FACTS AND PROCEDURAL HISTORY

Three police officers went to a tavern to do a "bar check." Their purpose was to look for underage drinking and other illegal activity. When conducting such bar checks, these officers routinely looked in tavern restrooms because they had previously found individuals hiding there in an attempt to escape detection. On the night in question, when the officers attempted to open the men's restroom door, which did not have a lock on it, they discovered that there was a person on the other side holding the door shut. After the officers knocked on the door, a male voice from inside told them to wait because the person was "taking a crap." At that point, one of the officers forced the door open, throwing to the floor the man who had been holding it shut. The restroom was a single room holding a sink, a urinal and a toilet, with no stalls or partitions of any kind. As the officers entered, Delacerda was standing facing the urinal and holding a plastic baggy with a powdery substance in it. The officers turned Delacerda around, and he threw the baggy toward the garbage can. The contents of the baggy later proved to be cocaine.

After Delacerda was charged with possession of a controlled substance, Idaho Code § 37–2732(c), he filed a motion to suppress the evidence seized in the restroom. Delacerda asserted that the police officers' forcible entry of the restroom violated the Fourth Amendment to the United States Constitution and Article I, section 17 of the Idaho State Constitution. The district court denied the motion, holding that Delacerda had no reasonable expectation of privacy in the public restroom. Thereafter, Delacerda pleaded guilty, reserving his right to appeal the denial of the suppression motion.

## ANALYSIS

The facts pertinent to the suppression motion are not in dispute. The trial court's determination that, on these facts, the police conduct complied with constitutional safeguards is a question of law over which we exercise free review. *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998); *State v. McIntee*, 124 Idaho 803, 804, 864 P.2d 641, 642 (Ct.App.1993).

The Fourth Amendment and Article I, section 17 of the Idaho Constitution, guarantee freedom from unreasonable searches.[1] These constitutional safeguards protect an individual's legitimate expectation of privacy, which has been defined as a subjective expectation of privacy that society is prepared to recognize as reasonable. *Oliver v. United States*, 466 U.S. 170, 177, 104 S.Ct. 1735, 1740–41, 80 L.Ed.2d 214 (1984); *State v. Donato*, 135 Idaho 469, 20 P.3d 5 (2001); *State v. Clark*, 124 Idaho 308, 316, 859 P.2d 344, 352 (Ct.App.1993). A Fourth Amendment analysis involves determining whether the defendant exhibited an actual, subjective expectation of privacy by seeking to preserve the matter as private, and if so, whether the defendant's expectation was objectively reasonable under the circumstances. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *State v. Wil-*

---

1. Delacerda does not assert that the protection against unreasonable searches provided by Article I, section 17 differs in this case from that conferred by the Fourth Amendment. Therefore, for convenience, through the balance of this opinion we refer only to the Fourth Amendment, but intend the same analysis to apply to Delacerda's assertion of rights under Article I, section 17.

*kins,* 125 Idaho 215, 222, 868 P.2d 1231, 1238 (1994).

■ A legitimate expectation of privacy "means more than a subjective expectation of not being discovered," *State v. Jennings,* 101 Idaho 265, 266, 611 P.2d 1050, 1051 (1980), and there can be no reasonable expectation of privacy in "[w]hat a person knowingly exposes to the public." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). Even activity within the home, to which the Fourth Amendment affords the greatest sanctity, *see Payton v. New York,* 445 U.S. 573, 589–90, 601, 100 S.Ct. 1371, 1381–82, 1387–88, 63 L.Ed.2d 639 (1980), is not protected against police observation if the occupants of the home have done nothing to shield their activity from the view of persons who look from vantage points that are open to the public. *See State v. Morris,* 131 Idaho 562, 564–66, 961 P.2d 653, 655–57 (Ct.App.1998); *Clark, supra.* ·Thus, in passing upon a claim of unreasonable governmental intrusion, we "examine the citizen's efforts to protect his own privacy from observation by the general public, taking into account norms of social conduct and the nature of the premises." *Morris,* 131 Idaho at 565, 961 P.2d at 656. The burden of proving a legitimate expectation of privacy lies with the defendant. *Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *State v. Cowen,* 104 Idaho 649, 651, 662 P.2d 230, 232 (1983).

This Court has previously held that a person has a reasonable expectation of privacy in the *stall* of a public restroom. In *State v. Limberhand,* 117 Idaho 456, 788 P.2d 857 (Ct.App.1990), the defendant was arrested for obscene conduct after an officer observed him, through a four-inch hole in a stall partition, masturbating in a public restroom. This Court determined that Limberhand had a legitimate expectation of privacy in the restroom stall notwithstanding the existence of the hole. The present case differs markedly from *Limberhand,* however, for here there was no stall, divider, or visual barrier of any kind, nor was there a lock on the restroom door that would allow a user to prevent entry by other persons.

It must be acknowledged that the functions for which toilet facilities are designed are ordinarily considered by society to be "private" and not something which one would wish to be viewed by the police or members of the public. And, as *Limberhand* establishes, the fact that a toilet or urinal is not thoroughly enclosed or shielded from view does not necessarily preclude a reasonable expectation of privacy. However, in assessing whether in the circumstances of a particular case an occupant of a public restroom had a reasonable expectation of privacy, the complete absence of any provisions for privacy in the physical layout of the restroom cannot be ignored. In the present case, the restroom was equipped with both a urinal and a toilet, thus permitting use by two people simultaneously, but with nothing to protect one user from the view of the other or from the view of anyone else who might enter the restroom. Given this visual openness of the restroom interior, and the lack of any lock to exclude others while the restroom was in use, an occupant could not reasonably expect privacy, even when using the restroom for its traditional purpose.

Delacerda asserts, however, that he took steps to assure privacy by having the other man hold the door shut and thereby created a subjective expectation of privacy that should be viewed as objectively reasonable. He argues that when a person wishes to use a public restroom that provides no means to protect privacy, and therefore asks a companion to hold the door closed, the person should be deemed to possess the same expectation of privacy as if the door were locked. We do not necessarily reject Delacerda's premise that an individual in that circumstance would have a protected privacy interest; the flaw in Delacerda's argument is that the evidence does not show that circumstance here. Nothing in the record indicates that Delacerda himself took any steps to protect his privacy. There is no evidence that Delacerda asked the other man in the restroom to hold the door shut or was relying upon him to do so; indeed, there is no evidence that Delacerda was even acquainted with the other person or had ever spoken to him before the police barged in. Thus, Delacerda's

claim that he took steps to create a reasonable expectation of privacy in an otherwise public restroom is unsupported by the record.

We conclude that Delacerda has not demonstrated that he had a reasonable expectation of privacy when the officers entered the public restroom. Consequently, the officers' actions did not violate Delacerda's constitutional right to be free from unreasonable searches. The denial of his motion to suppress evidence gained through the search is affirmed.

Judge PERRY and Judge Pro Tem HART concur.